**ELLER BROS., INC., Plaintiff-Appellant,**

v.

**HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF NASHVILLE, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section.

March 2, 1981.

Permission to Appeal Denied by Supreme Court July 6, 1981.

Joseph L. Lackey, Jr., Nashville, for plaintiff-appellant.

J. Murray Milliken, Wesley D. Turner, Gullett, Sanford & Robinson, Nashville, for defendant-appellee.

MATHERNE, Judge.

The plaintiff (Eller) sues for the balance due for work and material furnished in the completion of certain improvements on the property of the defendant (Home Federal). By counterclaim Home Federal seeks credit for certain amounts paid by it to other parties for the completion of portions of the contract work and, also, $500 per day liquidated damages allowed by the contract for each day beyond the date the work by Eller was to have been completed.

The chancellor found that under the contract Home Federal owed Eller $37,155, which figure is not disputed in this court. The chancellor further found that Eller did not complete the contract for 40 days beyond the contract completion date, and allowed Home Federal a set-off of $500 per day liquidated damages, or $20,000. The chancellor also allowed Home Federal an additional $500 expended due to a faulty blow-off valve installed by Eller. These set-offs resulted in a $16,655 judgment for Eller.

Eller appeals, insisting that (1) the chancellor erred in awarding $500 per day liquidated damages when Home Federal's proof established its actual damage to be a much lower figure, and (2) Home Federal is estopped to rely upon the liquidated damages provision due to its commission of certain acts during the contract period.

## I.

■ Home Federal did not formally perfect an appeal, but by brief it seeks affirmative relief under three issues for review. Home Federal's argument is that the contract was not completed until August 21, 1978, and that if its actual damages are computed to that date, it would still be entitled to the $20,000 delay damages. Home Federal's position is that should this court hold that the $500 per day liquidated damages can not be enforced, its actual damages would justify the $20,000 delay damages award.

By brief in this court, Eller argues that Home Federal, not having appealed, can not now assert its affirmative claim as above outlined. We disagree with that argument.

Rule 27(b) T.R.A.P. provides as follows:

If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief as well as the answer to the brief of the appellant.

The relief sought by Home Federal involves mixed questions of law and fact. Rule 13(a) T.R.A.P. governs the raising of questions of law on appeal, as follows:

Except as otherwise provided by Rule 3(e) any question of law may be brought up for review and relief by any party. Cross-Appeals, separate appeals and separate applications for permission to appeal are not required.

Rule 13(d) T.R.A.P. governs the scope of review of findings of fact in civil nonjury lawsuits, as follows:

Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

We, therefore, hold that Home Federal may on appeal assert its claim for affirmative relief as herein noted.

## II.

The pertinent provisions of the contract provide, as follows:

The undersigned proposes to furnish all materials and perform all labor necessary to complete the following: On Rolling River Estates, Phase II shown on the plat prepared by James L. Murphy, Jr., Co. Consulting Engineers dated July 1, 1977: to grade roads, install drainage system water mains and complete sanitary sewer system and to put down six inch stone base on roads. Said work to be done in

accordance with plans and specifications prepared by James L. Murphy, Jr. & Co. Consulting Engineers dated July 1, 1977, a copy of which is attached and made a part hereof, and to meet the requirements of Metropolitan Department of Public Works on roads, and Harpeth Valley Utility District on water and sewer system.

The above described work is to be completed on or before December 23, 1977. If the undersigned is delayed by bad weather conditions more than 60 days beyond December 23, 1977 the owner will incur liquidated damages in the amount of $500.00 per day beginning February 24, 1978, and continuing until all work described above other than paving is completed, which liquidated damages the contractor will pay to Home Federal without demand. (Tr. Vol. V 452).

\* \* \* \* \* \*

Final payment shall be made within sixty (60) days after the completion and acceptance has been given to a particular section by the Metropolitan Public Works Department (Roadway and Drainage). Harpeth Valley Utility District (Water and Sewers); FHA inspection has been obtained and the approval of the Engineer and Owner. The contractor shall be responsible for getting these inspections made and supplying the Owner with letters so stating these approvals. (Tr. Vol. V 460).

Home Federal had previously financed the development of Rolling River Estates, but it had to foreclose on that property. A part of the property had been developed to the extent that lots could be sold and residences constructed. The parties refer to that area of the development as Rolling River Estates, Phase I. As the sale of lots progressed in Phase I, Home Federal decided that the remainder of the property should also be developed to the extent that residences could be built. The contract under consideration was to develop that additional area as specified therein, which area was designated Rolling River Estates, Phase II.

■ Ellis began work in August 1977. There is an abundance of proof that the weather during the winter of 1977–78 was severe and that this weather delayed Eller's completion of the contract for a period beyond the 60 days the contract allowed for such delay. For that reason, Eller claims he should be excused from failure to meet the contract completion date. We disagree with that insistence and agree with the chancellor that bad weather was taken into consideration by the parties, and 60 days were allowed for delay caused thereby. If bad weather caused a delay of over 60 days, Eller is responsible for damages due to the excessive delay.

### III.

■ The first issue to be settled is the date the contract was completed. The chancellor found that the water and sewer portion of the contract was completed on December 16, 1977, when the system was tied-in with the system of the Harpeth Valley Utility District (Utility District). The chancellor further found that the road portion of the contract was completed on April 4, 1978, which he held to be the date the contract was completed. Home Federal insists that the contract was not completed until August 21, 1978, the date the water and sewer systems were "accepted" by the Utility District.

In December 1977 the Utility District had a Mr. Kennie as the inspector on the job. Kennie and Eller reached an agreement that the Phase II water and sewer systems would be tied-in with the system of the Utility District on December 16, 1977. After this was done, the Utility District placed a Mr. Eades on the job as its inspector. Eades made out a punch list of items to be corrected by Eller. The evidence conflicts as to the justification of most of these items for correction as well as when and how, if ever, they were corrected.

Looking to the acts of Home Federal during this period, we find that as early as November 1977 it sold a lot to one of its officials, Stephenson, who proceeded imme-

diately to build a house on the lot. Stephenson testified that he was in control of the development of Phase II on behalf of Home Federal. He stated that from November 1977 through March 1978 he could gain access to his lot for the delivery of materials only with the assistance of heavy equipment furnished by Eller. He admitted that he moved into his house on April 4, 1978, on which date normal delivery trucks moved furniture to the premises. We note that the chancellor held that the road work was completed on this same date.

In the meantime, during the period after February 24, 1978, Home Federal continued to sell lots. Construction began on several lots, and the record does not reveal that any purchaser of lots was denied access to the water and sewer system. In April 1978 Billy McNeal Brown, a builder, purchased a lot next door to Stephenson and immediately began building a residence. His lot appeared to be readily accessible by the roads built by Eller. Brown applied to the Utility District for utilities and received his hook-up about 30 days after request, which he testified was a normal delay. He made arrangements with Stephenson to use the utilities from Stephenson's lot until his utilities were turned on. This witness also contradicts Home Federal's insistence that it had to accept non-interest-bearing notes for lots in Phase II because of Eller's failure to complete the work. Brown stated that he bought one or two other lots in Phase II and gave non-interest-bearing notes therefor. He stated, however, that this method of purchasing the lots was offered to him by Home Federal as an inducement to buy the lots, not because of the lack of utilities.

Also of importance is the breakdown of a sewerage pumping station. This pumping station handled sewerage from the Phase I and Phase II areas. It was not constructed by Eller, and he had no responsibility therefore. Home Federal contacted Eller and entered into a verbal cost-plus contract with Eller to repair this pumping station. Eller testified that he worked on that job from March 1, 1978, to April 24, 1978. Mr. Eades, the inspector for the Utility District,

testified that this defective pumping station permitted raw sewerage to flow into the Harpeth River, and it was of first importance that it be repaired. Even though Eades was very evasive with his answers, a fair reading of the testimony establishes that no hook-ups in Phase I and Phase II should have been allowed to discharge sewerage into the defective pumping station. Even so, he stated that they did permit hook-ups in Phase I and Phase II, and he failed to name one individual who, upon request, was refused a hook-up.

The true import of the final "acceptance" by the Utility District of water and sewer systems installed in developments is placed in proper perspective by the record which reveals that Phase I did not receive such acceptance until April 1979. At that time, all lots in that area had been sold, excepting a few lots of marginal utility, houses had been erected thereon, and those houses had been occupied for a period of one and-a-half to two years.

Had the issue of whether the systems would be "accepted" by the District been between the District and Eller, the situation might have been different. Here, however, Home Federal made no complaint, sold lots as rapidly as possible, saw to it that the defective pumping station was immediately repaired, and treated the lots as ready for sale before the contract completion date. It is understandable that the developer would want building activity to prevail in the area as an inducement to other potential buyers. The developer, however, can not say that it will treat the utility system as complete for the sale of lots but incomplete for the enforcement of damages for failure to build the system. To allow Home Federal, under the facts presented, to rely upon a technical "acceptance" by the Utility District as the contract completion date would be, at the least, highly inequitable. We, therefore, do not accept the argument of Home Federal that it should receive damages based upon a contract completion date of August 21, 1978, the date the Utility District formally "accepted" the water and sewer systems.

We hold that the evidence does not preponderate against the finding of the chancellor that the contract was completed on April 4, 1978, and his decree in that respect is affirmed. Rule 13(d) T.R.A.P., *supra.*

■ We agree with the chancellor in his rejection of Eller's argument that it should not be held to the completion date because of the work it did on the pumping station. We understand that the defective pumping station in its unrepaired state could have, and maybe should have, stopped the entire development. That, however, was not Eller's responsibility, and Eller should not have entered into the contract to repair the pumping station with the expectation of being relieved of its obligation under the contract with Home Federal.

■ Further, we agree with the chancellor in his finding that Home Federal did not waive damages due under the contract because of delay in its completion. Eller argues that he notified Home Federal by letter that he could do no work on the development because of bad weather. Home Federal did not reply. This action was probably discourteous, but it did not waive damages due to delay in the completion of the contract.

### IV.

With the contract completion date of April 4, 1978, established, we must now determine the damages due because of the delay in completing the contract. The chancellor applied the $500 per day liquidated damages provision of the contract. We disagree with that holding.

In *Patterson v. Anderson Motor Co.,* (Tenn.App.1958) 319 S.W.2d 492, Judge Bejach clearly summarized the law, as follows:

Forfeitures or penalties are not favored by our law; but, where a contract is of a nature where damages for its breach are uncertain and not susceptible to exact measurement, it is lawful for the parties to stipulate that a fixed sum shall be recoverable for its breach; and, if the stipulated sum is reasonable under the circumstances, it will be treated as liquidated damages and enforced, although it may be called a penalty or forfeiture in the contract. On the other hand, if a sum so stipulated, is not reasonable, it will be treated as a penalty or forfeiture however named in the contract, and its enforcement refused. *Illinois Cent. R. Co. v. Southern Seating & Cabinet Co.,* 104 Tenn. 568, 58 S.W. 303, 50 L.R.A. 729, 78 Am.St.Rep. 933. Also, in determining whether the amount specified in a bond for performance is a penalty or liquidated damages, the particular words are not conclusive on the parties or the Court. *City of Nashville v. Nashville Traction Co.,* 142 Tenn. 475, 220 S.W. 1087.

The foregoing rule has also been announced in *V. L. Nicholson Co. v. Transcon Inv.,* (Tenn.1980) 595 S.W.2d 474; and *Hasden v. McGinnis,* (Tenn.App.1964) 387 S.W.2d 631.

Home Federal introduced at trial two calculations of actual damages for the delay period. The first computation was calculated as interest on the value of the property tied up as a result of Eller's breach. The second computation was calculated as interest on Home Federal's investment in the property over the period of the delay. In each computation the interest rate of nine and one-fourth percent was used as the going rate for land development loans at that time. In each computation the period of delay used was from February 24, 1978 to August 21, 1978. The damages under the first computation was $97.00 per day of delay; under the second computation damages was $74.00 per day of delay. There is no evidence to the contrary.

■ Even if the parties intended to fix an amount as liquidated damages, recovery will be limited to actual damages if the amount stipulated for is so greatly in excess of the actual damages that it is, in effect, a penalty. *Railroad v. Cabinet Co.,* (1900) 104 Tenn. 568, 579, 58 S.W. 303; *City of Nashville v. Nashville Traction Co.,* (1919) 142 Tenn. 475, 220 S.W. 1087.

■ Under the facts and the authorities cited, we hold that the $500 per day of delay liquidated damages is totally unrea-

sonable and exceeds the amount of actual damages proved in such an amount as to be an unenforceable penalty.

The contract completion date was December 23, 1977, with an extension of 60 days, if needed due to bad weather. Having held that Eller lost more than 60 days due to bad weather, the contract completion date must be extended 60 days from December 23, 1977. Using Am.Jur.2d Desk Book, Item 178, Calendar No. 1 and Calendar No. 7, we compute the contract completion date to be February 21, 1978.

In applying the $500 per day liquidated damages award, the chancellor used February 24, 1978, as the first day of delay because the contract so provided. Since that measure of damages is not applicable, the actual number of days of delay must be determined. From February 21, 1978 through April 4, 1978, is 42 days.

In arriving at the $74.00 and the $97.00 figures, Home Federal used the period from February 24, 1978 to August 21, 1978. We can not accept either figure because the period of delay was from February 21, 1978 through April 4, 1978. The per day computation must be based upon that period of time, and could result in figures lower or higher than those presented.

Even though the proof of damages is not sufficient for us to make and award, we hold that the proof is sufficient to justify our holding that the $500 per day liquidated damages provision in the contract is unreasonable and so far in excess of actual damages suffered as to render it unenforceable.

The chancellor is affirmed in his finding (1) that the actual completion date of the contract was April 4, 1978; (2) that Home Federal owes Eller $37,155 under the contract; and (3) that Home Federal be allowed a $500 set-off due to a defective blow-off valve installed by Eller. The chancellor's award of $500 per day liquidated damages for 40 days is reversed. This lawsuit is remanded to the chancery court for a finding of actual damages due to the delay in completing the contract for that period from February 21, 1978 through April 4, 1978, and for judgment accordingly.

The costs in this court and in the trial court are assessed one-half against each party for which execution may issue, if necessary.

NEARN, J., concurs.