William A. BEASLEY, III, and Sarah Beasley, Plaintiffs–Appellants,

v.

Henry HORRELL, John Wilson Horrell, Stephen H. Horrell, and H J & S Investments, a Tennessee General Partnership, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section.

June 9, 1993.

Permission to Appeal Denied by Supreme Court Oct. 4, 1993.

**46**

Ward DeWitt, Jr., P. Michael Richardson, Trabue, Sturdivant & DeWitt, Nashville, for plaintiffs-appellants.

Michael A. Meyer, Sidwell & Barrett, Franklin, for defendants-appellees.

*OPINION*

LEWIS, Judge.

Plaintiffs, William A. Beasley, III, and Sarah Beasley, appeal from the trial court's granting of defendants' motion for summary judgment and the resulting judgment entered for the defendants which cancelled a $100,000.00 note made by defendants and payable to plaintiffs. Plaintiffs also appealed from the trial court's refusal to reform the note.

Plaintiffs filed a declaratory judgment action seeking a declaration that the cancellation provision in a $100,000.00 non-negotiable promissory note made by defendants is an unenforceable penalty and, also, sought to have the note reformed to provide that defendants be held personally liable on the note.

Defendants contended that under its terms the note is cancelled.

Both parties filed a motion for summary judgment. The trial court, after considering the entire record, granted the defendants' motion and entered judgment canceling the note.

The pertinent facts are as follows:

Plaintiffs William and Sarah Beasley owned two parcels of real property in Davidson County, Tennessee, a 22,750 square foot building (small building) and a 72,946 square foot building (large building). Plaintiffs had previously leased both buildings to Beasley & Sons, a family-owned company. In 1987 Beasley & Sons began experiencing an acute financial crisis and plaintiffs decided to sell

the two buildings in order to raise cash for the business.

On 11 November 1987 and 24 November 1987, plaintiffs entered into sale and leaseback agreements with Allied Partners[1] involving both the large and small buildings. Plaintiffs sold the small building for $350,000.00 cash and the large building for $1,150,000.00 cash and a $100,000.00 promissory note. On 30 December 1987, plaintiffs executed two leases with H J & S, one for each building.

As part of the sale and leaseback agreement, H J & S, through its attorneys, drafted a non-negotiable promissory note in the original principal amount of $100,000.00, payable to the plaintiffs and Beasley & Sons. The note bore interest at a fixed rate of eight percent (8%) per annum and was due and payable on 8 January 1993. It also contained a cancellation provision (the cancellation provision), as follows:

Anything herein to the contrary notwithstanding, if Holder should default in the payment of any rent or any other payments due under the Leases, when, as and if due and payable, the indebtedness represented by this Note shall be automatically revoked and this Note shall ipso facto become null and void.

The leases referred to in the note are the leases of the two buildings involved in the sale and leaseback transaction. The leases required that the plaintiffs make a variety of payments, including: rent, all taxes and assessments, premiums for property damage and liability insurance, any sales, use or other taxes on rent, all utility bills and certain types of repairs. The note further provided that: "Should Holder herein fail to pay Maker the monthly rent and one-twelfth of the taxes and insurance premium due under either of the two Leases, Maker may set off the money owed Maker by Holder against any monies owed Holder by Maker for any of its obligations to Holder." This provision is hereafter referred to as the "setoff" provision.

The note also contained a "limitation of recovery" provision which provided as follows:

Holder agrees to look only to the rents from the written Leases now in existence or which may come into existence within one month from the date hereof on property owned by the Maker and any judgment obtained therefor shall be satisfied only out of the rents from such Leases. Holder agrees that it will not seek a personal judgment against Maker or any of its partners for any liability hereon.

The leases on each of the buildings ended in December 1992. On 8 January 1993, the date that the note would be due and payable, no rent payments would be due under the leases.

In April 1988, Beasley & Sons filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee. At that time, Beasley & Sons was controlled by Central Woodwork of Memphis, Inc. (Central Woodwork) pursuant to a management agreement.

During the bankruptcy proceedings, the debtor in possession, Beasley & Sons, pursuant to the provisions of the Bankruptcy Code, rejected the lease on the small building and assumed the lease on the large building. Beasley & Sons, which was renamed Central Woodwork of Nashville, Inc., has continued to make all payments pursuant to the large building lease. H J & S later sold the large building to Horrell Properties, Inc., a Tennessee corporation, for a $50,000.00 profit.

After the filing of the bankruptcy petition, plaintiff William A. Beasley, III, undertook to make the payments under the small building lease personally. In October 1988, H J & S contracted to sell the small building to Deak and Company at a price of $489,225.00. This sales price was $139,225.00 more than H J & S had paid for the small building less than one year previously. Plaintiff Beasley made all of the payments required under the small building lease until November 1988, when they were no longer able to do so. To facilitate the sale, H J & S and plaintiff Mr. Beasley entered into an agreement that the

---

1. Allied Partners subsequently assigned its interests under the agreement to H J & S.

small building lease would terminate effective 31 December 1988 provided the sale was consummated. In December 1988, H J & S consummated the sale of the small building to Deak and Company. At the time of the sale of the small building, rent for two months of the lease was unpaid. After crediting the pre-paid rent, the plaintiffs owed H J & S $4,905.99 for unpaid rent and $904.71 for taxes and insurance under the small building lease.

H J & S informed plaintiffs that they considered the note null and void because of the default under the small building lease. Plaintiffs then filed this declaratory judgment suit.

Plaintiffs' first issue is:

Whether a cancellation provision in an interest-bearing nonnegotiable promissory note in the original principal amount of $100,000 which provided that the note would be cancelled and void if the holder failed to make any payment under certain leases executed in conjunction therewith is an unenforceable penalty because it purports to treat any monetary default, regardless of timing or amount, as voiding the entire note[.]

■ Plaintiffs argue that the cancellation provision in the promissory note is an unenforceable penalty because it is not a reasonable estimation of the foreseeable damages from the failure to make payments required by the leases.

■ Parties to a contract may stipulate to an amount as liquidated damages. However, if the stipulated amount amounts to a penalty, it will not be enforced. *Patterson v. Anderson Motor Co.,* 45 Tenn.App. 35, 319 S.W.2d 492, 501 (1958). A penalty is a "sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default." *Harmon v. Eggers,* 699 S.W.2d 159, 163 (Tenn.App.1985). Liquidated damages is an amount determined by the parties to be just compensation for damages should a breach occur. *Harmon,* 699 S.W.2d at 163. In determining whether a particular provision constitutes liquidated damages or a penalty, the court must determine whether the amount stipulated was rea-

sonable in relation to the amount of damages that could be expected to result from the breach. *Id.* If the amount stipulated was reasonable, the parties probably intended the provision to be liquidated damages. "However, 'even if the parties intended to fix an amount as liquidated damages, recovery will be limited to actual damages if the amount stipulated for is so greatly in excess of actual damages that it is, in effect, a penalty.'" *Id.* (*quoting Eller Brothers, Inc. v. Home Federal Savings & Loan Assn.,* 623 S.W.2d 624, 628 (Tenn.App.1981)). In Tennessee, a liquidated damages provision must be both reasonable in relation to the anticipated damages from breach and not grossly disproportionate to the actual damages that occur. When there is doubt whether a provision is intended to be liquidated damages or a penalty, the court must construe it as a penalty. *Testerman v. Home Beneficial Life Ins. Co.,* 524 S.W.2d 664, 668 (Tenn.App.1974).

In the instant case the note contains a separate provision for compensation for monetary defaults, the setoff provision. If plaintiffs failed to pay rent, taxes or insurance as required by the lease, the defendants could setoff that amount against the amount of the note pursuant to the setoff provision. The setoff provision compensates the defendants for damages from missed payments. The cancellation provision is not intended to be compensation for a missed or late payment because the setoff provision completely fulfills that function.

From defendant Henry Horrell's testimony, it is clear that the note was intended to act as a spur to prevent the breach, and not as an estimate of damages resulting from a breach. Mr. Horrell describes the note as a "good conduct" note and as a "carrot" and "reward for good behavior." A reading of the note shows that it is also intended to be punishment if there is a default, no matter how slight the default.

The cancellation provision provides that if the plaintiffs "should default in the payment of any rent or any other payments due under the Leases, when, as and if due and payable, the indebtedness represented by this Note shall be automatically revoked and this Note shall ipso facto become null and void." Un-

der the express terms of the note, the plaintiffs forfeit the entire amount of the note plus up to $40,000.00 in interest if they missed or even were late on any of the payments required by the lease. The leases contain a variety of payment requirements that vary in amount and importance. Plaintiffs are required to pay: 1) rent; 2) all taxes and assessments; 3) premiums for property damage and liability insurance; 4) any sales, use or other taxes on the rent; 5) all utility bills; and 6) certain types of repairs.

The foreseeable damage from missing or being late on a payment under the lease is the amount of the missed payment. If the plaintiffs missed or were late on any one of the payments required under the lease, whatever the amount or nature, H J & S would not incur damages anywhere near $100,-000.00. The amount of damages caused by a failure to pay utility bills or insurance premiums differ from the amount of damages caused by a failure to pay rent. Yet, defendants could receive $100,000.00 as a result of either breach. The cancellation provision is not for compensation of defendants for damages from a missed payment under the lease. Where a monetary default is specifically defined, it is unnecessary and inappropriate to have a liquidated damages clause since liquidated damages clauses are inserted where damages from breach are uncertain, not when they can be precisely ascertained.

▮ If a contract "contains a number of stipulations of varying degrees of importance and a single sum is made payable for any breach, applicable alike to important and unimportant covenants, it will be treated as a penalty rather than liquidated damages, no matter what name is given it by the parties." *City of Nashville v. Nashville Traction Co.*, 142 Tenn. 475, 480, 220 S.W. 1087 (1920). To enforce this type of provision would allow a party to recover the full amount of liquidated damages even for a minor breach. *Id.* at 481, 220 S.W. 1087.

▮ The court will not presume that parties chose the amount stipulated as liquidated damages as compensation of breach of both important and unimportant covenants. *Evans v. Moseley*, 84 Kan. 322, 114 P. 374 (1911). Where potential damages from a breach of various covenants differ in amount, one lump sum of liquidated damages cannot be construed as a reasonable approximation of compensation for breach of each covenant. *Suburban Gas Co. v. Mollica*, 21 N.J.Misc. 118, 32 A.2d 462, 464, *aff'd*, 34 A.2d 892 (N.J.1943).

In the instant case, plaintiffs would forfeit $100,000.00 for missing a payment required by the lease regardless of when during the lease term the breach occurred. We are, therefore, of the opinion that the defendants obviously did not draft the cancellation provision with compensation in mind. In *Jennings v. First Nat'l Bank*, 225 Mo.App. 232, 30 S.W.2d 1049 (1930), the court held that the forfeiture of a lump sum for default under a lease, regardless of the timing of the breach, was a penalty, not liquidated damages. In *Jennings*, the parties entered into a five-year lease agreement but provided that the lessee pay $2,500.00 at the beginning of the term to cover any failure of the lessee to make its monthly $500.00 rental payments. The lessee paid two months' rent before abandoning the premises. The Missouri Court of Appeals held that the $2,500.00 constituted a penalty because the parties had made "no attempt to graduate the amount according to the length of the unexpired part of the term." *Id.* at 1053. The court rejected the argument that the parties believed that one lump sum was an appropriate amount of damages whether the breach occurred earlier or late in the lease term. *Id.*

Here, the plaintiffs would forfeit the entire $100,000.00, plus up to $40,000.00 in accrued interest, whether they missed a payment at the beginning of the lease term or at the end. The cancellation provision does not differentiate based on the timing of the breach even though defendants' damages would be greatly different if the breach occurred at the beginning of the lease rather than if the breach occurred at the end. In addition, the entire amount of up to $140,000.00 could be forfeited under the cancellation provision, even if plaintiffs were only one day late on any payment. It is without question that, in drafting the cancellation provision, defendants were not attempting to make a reasonable estimate of the damages that could re-

sult from missed or late payments under the leases.

In determining whether a provision constitutes liquidated damages or a penalty, the court must look to the language of the provision. *See Piccadilly Square v. Intercontinental Constr. Co.,* 782 S.W.2d 178, 185–86 (Tenn.App.1989). In *Piccadilly,* the contract between the parties provided that if the defendants did or did not do certain things they would forfeit a particular amount as liquidated damages. Defendants breached the contract and the plaintiffs sought to recover. The court held that the liquidated damages provision the defendants sought to enforce was inapplicable because the breach that occurred was not covered by the provision. *Id.* at 186. The court stated: "The defendants attempt to read something into this provision that is not there." *Id.*

In the instant case, defendants attempt to read into the cancellation provision something that is not there. The cancellation provision is predicated on a late payment, not bankruptcy of the lessee. Under the terms of the cancellation provision, the plaintiffs could forfeit the $100,000.00 note only if they were late on or missed a payment under the lease, regardless of timing or amount. The various and sundry damages discussed in the affidavits of Mr. Storey and Mr. Horrell are irrelevant to the issue of the reasonableness of the cancellation provision. If H J & S had wanted to include other nonmonetary defaults in the cancellation provision, they could have done so. They were the drafters of the note and, therefore, the terms are construed more strongly against H J & S and the individual partners. *Hanover Ins. Co. v. Haney,* 425 S.W.2d 590, 221 Tenn. 148 (Tenn.1968); 17A Am.Jur.2d *Contracts* § 348 (1991). Here, the liquidated damages clause is for monetary defaults which are easily ascertained and their value arrived at. It is obvious that no purpose other than a penalty or forfeiture is served by providing that any missed payment results in the total forfeiture of the note. Compensation for such a monetary default, up to the full amount of the note, is provided for by the setoff provision.

We are of the opinion that the Chancellor, in arriving at his decision, impermissibly broadened the liquidated damages provision beyond its literal term. It seems that the Chancellor has read the provisions for total cancellation of the note for failure to make any payment, no matter how small, on the date due as being tantamount to a total breach of the lease. However, that is not what the contract says and it is impermissible to read something into a liquidated damages provision that is not there. *Piccadilly Square v. Intercontinental Constr. Co.,* 782 S.W.2d 178, 186 (Tenn.App.1989). A provision which purports to impose the same penalty for breaches of various importance and degree is an unenforceable penalty. *City of Nashville v. Nashville Traction Co.,* 142 Tenn. 475, 480, 220 S.W. 1087 (1920). Comparing the forfeiture of the $100,000.00 note to the damages that could result from a missed payment under the lease, it becomes clear that the cancellation provision is not a reasonable estimate of potential damages. Defendants have the burden of proving that the cancellation provision is reasonable. *Patterson v. Anderson Motor Co.,* 45 Tenn. App. 35, 319 S.W.2d 492, 501 (1958). Defendants have failed to meet their burden.

Our courts have consistently held that even if the amount designated as liquidated damages bears a reasonable relationship to the amount of foreseeable damages from breach, courts will not enforce a provision that results in a forfeiture of an amount greatly in excess of the amount of actual damages. *Harmon v. Eggers,* 699 S.W.2d 159, 163 (Tenn.App.1985) (*quoting Eller Brothers, Inc. v. Home Federal Savings & Loan Assn.,* 623 S.W.2d 624, 628 (Tenn.App. 1981)). Penalties are not favored in this state. *Id.* at 163.

In *Harmon,* plaintiffs purchased property from the defendants, paid $32,000.00 of the $63,000.00 purchase price, and signed a contract to pay the remaining amount in seventy-two monthly installments. The contract provided that if the plaintiffs failed to make any monthly installment when due, the plaintiffs would lose the property and the defendants would retain all previously made payments as liquidated damages. Plaintiffs de-

faulted in their payment after four months because of a dispute with defendants. The plaintiffs had paid more than fifty percent of the purchase price before defaulting, and the trial court held that the liquidated damages clause did not constitute an unenforceable penalty. 699 S.W.2d at 161.

On appeal this Court reversed, holding that the provision was a penalty. *Id.* at 164. Further, this Court stated: "To give effect to the 'liquidated damages' provision of the 'Real Estate Sale and Purchase Agreement' under these facts would be equivalent to our sanctioning a forfeiture/penalty, contrary to the interests of justice. This we cannot do." *Id.*

In *Eller Brothers, Inc. v. Home Federal Savings and Loan Association*, 623 S.W.2d 624 (Tenn.App.1981), this Court refused to enforce the liquidated damages provision because it was so far in excess of actual damages that it was unreasonable and an unenforceable penalty. *Id.* at 628–29. The construction contract in *Eller Brothers* contained a $500.00 per day damages-for-delay clause. The proof showed that the actual damages were either $97.00 per day or $74.00 per day. The trial court enforced the liquidated damages provision, and this Court disagreed, holding that $500.00 per day was so far in excess of either figure that it was totally unreasonable and unenforceable. *Id.* at 628–29. *See also Airline Constr. v. Barr*, 807 S.W.2d 247, 260 (Tenn.App.1990).

Here, defendants seek to enforce what amounts to a $140,000.00 forfeiture when the actual damages from plaintiffs' failure to make the final payments are less than $10,-000.00. The actual damages suffered by defendants are grossly disproportional to the entire $140,000.00 due plaintiffs. This is particularly true in light of the fact that H J & S sought and obtained permission from plaintiffs to terminate the lease early and made a $50,000.00 profit. The only payments which the defendants claim were missed by the plaintiffs were the November and December rental payments under the small building lease, plus prorated taxes and insurance in the amount of approximately $904.00. Even applying the interest factor to the unpaid amounts, the actual damages would be far less than $10,000.00. The amount of actual damages is grossly disproportionate to the amount due under the note. The cancellation provision is unreasonable and unenforceable. We find no evidence in this record tending to show that the actual damages are not grossly disproportionate to the forfeiture of the entire note. The affidavit of Mr. Storey discusses various damages that the defendants assert they have incurred. However, none of these are even asserted to result from the two missed payments at the end of the lease. Mr. Storey testified, in part, by affidavit as follows:

It is true that the lease will expire in December, 1992 and the tenant would be free to vacate the space at that time. This does not lessen the damage suffered by the Horrells. All of these losses arose at the time the lease was breached. This occurred within six (6) months after the lease was signed. As described above, the breach has prevented them from selling the building at a profit. This represents a definite economic harm.

Mr. Storey's affidavit also goes into detail about the defendants not being able to sell their property because of defaults in the reorganization of Beasley & Sons. However, it is undisputed that both pieces of property were in fact sold by H J & S and both were sold at a substantial profit. H J & S and its partners, not the Horrells, are the obligors under the note. Mr. Horrell himself has admitted that his reason for invoking the cancellation provision was not the two missed payments but, in fact, the reorganization of Beasley & Sons which left it on the large building lease and the lease has been duly paid. Mr. Horrell testified in part as follows:

A. Well, that was—his failure to make those final small payments, is the straw that broke the camel's back. That's not the real reason for us taking our present position. It's [sic] just one of the things.

Q. Tell me what the other things are.

A. What the other things are?

Q. Yes, sir.

A. The damages that we have suffered, as a result of the actions of Beasley and Company.

Even if Mr. Beasley had made the two payments, Mr. Horrell might not have paid the note since he testified as follows:

Q. So again, I go back to the statement that whether Bill Beasley had made these two lease payments or not, you didn't intend, at that point, to perform under the note; is that right?

A. I didn't say that. I would say in retrospect, looking back, realizing how we've been damaged, I would have been in error if I had, at that time, collected the money, and reaffirmed, yes, your note is good, and so on. It began to dawn on me, when I heard from you, just how badly I had been damaged.

The missed payments occurred in November and December and were therefore not addressed in the affidavit. The defendants produced no relevant evidence to meet their burden of proof that the damages resulting from the missed payments were not grossly disproportionate.

The method for calculating the defendants' actual damages is to determine what amount was actually paid under the lease of the small building when it was sold, less any amount retained by H J & S from the plaintiffs at the beginning of the lease. Plaintiffs had prepaid $3,791.67 as a final months' rent on the small building, as well as $15,136.29 on the large building. Plaintiffs did not pay the rent payments for November and December of 1988 on the small building, which totaled $8,697.66. The small building was sold in December 1988. After crediting the prepaid rent of $3,791.67 against the unpaid rent, the net amount of unpaid rent would be $4,905.99. Plaintiffs also did not pay $904.71 in pro rated taxes and insurance on the small building. The damages, therefore, from missed payments under the lease totaled $5,810.70. Applying an interest rate of eight percent (8%) to this amount results in less than $2,000.00 in accrued interest from the time the payments were missed to July of 1992.

The forfeiture of the $100,000.00 promissory note, plus approximately $40,000.00 accrued interest, is disproportionate to the actual damages in the instant case. We are of the opinion that the Chancellor misapplied Tennessee law when he granted summary judgment to the defendants.

It therefore results that the grant of summary judgment is reversed. On remand, the trial court shall enter summary judgment for the plaintiffs on the issue of liquidated damages because there is no genuine issue of material fact and plaintiffs are entitled to a judgment as a matter of law.

The trial court, after granting defendants' motion for summary judgment, determined that the issue of whether the note should be reformed was moot. Our reversal of the trial court's grant of summary judgment brings this issue back to the forefront. Therefore, on remand, the trial court shall determine if the note should be reformed. The cause is remanded to the trial court for entry of judgment in conformity with this opinion and for further necessary proceedings.

Costs on appeal are assessed to defendants-appellees.

TODD, P.J., and KOCH, J., concur.