# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **CHARLES E. CREWS,** | ) | |
| | ) | |
| Plaintiff/Appellee | ) | Shelby Chancery No. 102887 |
| | ) | |
| **vs.** | ) | |
| | ) | **January 28, 1998** |
| **DEXTER ROAD PARTNERS,** | ) | Appeal No. 02A01-9603-CH-00045 |
| **O.P. ADNEY, JR., Individually,** | ) | |
| **LARRY L. TAYLOR, Individually,** | ) | |
| **and W. TERRY EDWARDS, Trustee,** | ) | **Cecil Crowson, Jr.** |
| | ) | |
| Defendants/Appellants. | ) | **Appellate Court Clerk** |

FILED

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE C. NEAL SMALL, CHANCELLOR

For the Plaintiff/Appellee:

Julie Bartholomew
Cordova, Tennessee

For the Defendant/Appellant:

Douglas Hartley
Cordova, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

In this case, the parties entered into a real estate contract in which the seller was required to construct a road to the property by a specified date. The road was not completed by the agreed deadline, and the buyer sued for liquidated damages provided for by the contract. The trial court awarded liquidated damages, and the seller appeals. We affirm.

On December 4, 1991, Appellant Dexter Road Partners ("DRP") contracted with Appellee Charles Crews ("Crews") to sell Crews 4.31 acres of land for $1,450,000. Crews planned to build a shopping center on the property. Access to the property was to be provided by the completion of two planned roads, New Dexter Road and Bonnie Lane. An Addendum to the contract provided that Crews would have sixty days in which to either close the transaction or reject it. The Addendum also included a condition precedent requiring DRP to convey the property "with all improvements known as New Dexter Road complete" at the closing.

Negotiations followed in which DRP attempted to convince Crews to close the transaction prior to the completion of New Dexter Road. Finally, on July 24, 1992, the parties executed a Memorandum of Agreement ("Memorandum"), drafted by DRP. The Memorandum provided for full tender of the purchase price in exchange for DRP's promise to:

> substantially complete the General Street Requirements as set forth in that certain City/County Standard Improvement Contract for New Dexter Road and Bonnie Lane by November 1, 1992; provided, however, that failure to complete any such required improvement under said contract beyond the curbs and gutters for such streets, including but not limited to sidewalks, final grading and sodding, if applicable, shall not be subject to the November 1, 1992 completion date.

The City/County Standard Improvement Contract for New Dexter Road and Bonnie Lane ("Improvement Contract"), referred to in the Memorandum, was not attached to it. Crews had originally wanted the roads dedicated and accepted by all the necessary government authorities by November 1, but dropped this demand in signing the Memorandum. The Memorandum further provided that DRP would pay Crews "a penalty of $1,335.00 per day for each day beyond November 1, 1992, until fully complete."

DRP contracted with Construction Technologies, Inc. ("CTI") to perform the road improvements. A few days after signing the Memorandum, DRP and CTI entered into an Indemnity Agreement. In this contract, CTI agreed to indemnify DRP for any losses it suffered through default under the terms of the Memorandum. The Indemnity Agreement referred to the liquidated damages clause of the Memorandum and recited that time was of the essence, but did not mention the

Improvement Contract. In addition, it referred to "full completion and development of New Dexter Road and Bonnie Lane" by November 1, except for those improvements outside the curbs and gutters.

As of November 1, no soil cement or asphalt had been laid for the roads. Placement of the soil cement was completed by November 13. By November 30, the roads were at least partially barricaded and had not been striped. Asphalt paving was complete by December 2. As of December 28, barricades were still in place on the roads, and the traffic light had been installed but was still operating in flashing mode. Road signs had not been placed, and the roads were not yet ready for traffic. Crews demanded payment by DRP of liquidated damages, pursuant to the Memorandum, of $78,765, representing $1,335 per day for 59 days, the period from November 1 to December 31. DRP refused to pay, so Crews sued for liquidated damages under the contract.

During discovery, DRP initially failed to respond to Crews' first set of interrogatories. Crews filed a motion to compel. Crews and DRP then entered into a consent order, under which DRP had a deadline of April 1, 1994 to answer the interrogatories. As of April 27, the interrogatories had not been answered, so Crews filed a petition for scire facias, alleging contempt and asking for sanctions and attorney's fees. DRP filed its answers to the interrogatories on June 10. At the hearing on Crews' petition for scire facias on June 27, 1994, the trial court found that DRP's answers were incomplete. The court ordered DRP to file supplemental answers by July 11 and reserved consideration of sanctions. DRP filed its Supplemental Answers on July 15. In response to Crews' request for the production of documents, DRP provided three of the documents requested by plaintiffs.

At the bench trial, DRP's counsel attended, but no representatives of DRP were present. DRP's counsel admitted to breach of contract but maintained that the roads were substantially complete on December 3, 1992. DRP also argued that the liquidated damages provision in the contract was unenforceable as a penalty. DRP admitted that its discovery responses had been dilatory and incomplete but asserted that many of the requested documents were not in DRP's possession. Proof at trial established that several of DRP's answers to Crews' interrogatories were incorrect, stating completion dates that were earlier than the actual completion dates. In addition, one of the three documents produced by DRP, an invoice dated October 20, 1992, indicated that at least some soil cement and paving work had been done by that date. The document proved to be an

2

invoice for unrelated work performed on an adjacent site. Crews was unable to begin construction of the commercial structure until March, 1993.

The trial court allowed into evidence documents extrinsic to the Memorandum, including the Indemnity Agreement and some letters between the parties. In addition, the trial court applied the missing witness rule against DRP. It found that the roads were not substantially complete until December 31, 1992, the day on which they were complete from curb to curb and open for traffic. The trial court upheld the liquidated damages provision of $1,335 per day and awarded Crews liquidated damages of $78,765. The trial court also awarded Crews pre-judgment interest at the rate of 10% from December 31, 1992, in the amount of $22,313.32. In addition, it sanctioned DRP for discovery violations by awarding Crews $7,500 in attorney's fees. From this decision, DRP now appeals.

On appeal, DRP raises several issues. First, DRP asserts that, under the contract, the road was "substantially complete" earlier than the date found by the trial court. Next, DRP contends that the contractual provision for liquidated damages was a penalty and should not have been enforced. Finally, DRP argues that the court erred in awarding pre-judgment interest and in sanctioning DRP for discovery violations.

Contract interpretation is a question of law, and our review is therefore *de novo* upon the record with no presumption of correctness attached to the trial court's interpretation. Tenn. R. App. P. 13(d); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. App. 1994). If, however, the contract contains ambiguity which necessitates looking to extrinsic evidence to determine the intention of the parties, then the court's factual findings are presumed correct unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *APAC-Tennessee, Inc. v. J.M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. App. 1986); *Southern Ry. Employees Credit Union v. Thornburg*, 680 S.W.2d 791, 792 (Tenn. App. 1984).

DRP first raises the issue of when New Dexter Road and Bonnie Lane were "substantially complete" under the terms of the contract. This Court has previously addressed the basic rules of contract construction:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary

meaning, and neither party is to be favored in the construction.

> The court, at arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract.

*Rainey v. Stansell*, 836 S.W.2d 117, 118-19 (Tenn. App. 1992) (citations omitted). While courts usually look to the four corners of a contract in interpreting it, *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. App. 1994), extrinsic evidence is admissible to aid in discerning the parties' intent when a particular provision is ambiguous. *Southern Ry. Employees Credit Union v. Thornburg*, 680 S.W.2d 791, 792 (Tenn. App. 1984). To determine whether a provision is ambiguous, courts follow certain accepted principles:

> The language in dispute must be examined in the context of the entire agreement. As previously indicated, words must be given their usual and ordinary interpretation. The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. "A strained construction may not be placed on the language used to find ambiguity where none exists."

*Gredig*, 891 S.W.2d at 912 (citations omitted). Finally, if an ambiguity exists, it should be construed against the party that drafted the contract. *Frank Rudy Heirs Assocs. v. Moore & Assocs.*, 919 S.W.2d 609, 613 (Tenn. App. 1995).

In this case, it is undisputed that the Memorandum contains a November 1, 1992 deadline for substantial completion of "the General Street Requirements" in the Improvement Contract. Although the Improvement Contract is not attached to the Memorandum, clearly we must examine it to determine the meaning of the term "substantially complete" in the Memorandum. As of December 3, 1992, DRP had completed most but not all of the requirements in the Improvement Contract. The Improvement Contract required signs to be in place and required barricades "at the end of each uncompleted street at the boundaries of the Project." Evidence presented at trial established that some barricades were in place by November 30, but other evidence indicated that on December 2 barricades still needed to be placed on New Dexter Road and Bonnie Lane. By December 8, at least one barricade was in place. By December 28, at least one other barricade had been erected, and street signs, as of that date, were still not in place. The General Street Requirements specified that all street signs and posts were to "be in place prior to paving of streets." Further, DRP was required to "install all striping, marking, and signing required as a result of the

median modification." It is not clear from the evidence that all of this had been done by the 28th. The Improvement Contract also provided for sidewalk construction, but the Memorandum excluded this item from the November 1 deadline.

Based on these facts, DRP argues that the roads were "substantially complete" as of December 3, 1992, within the meaning of the Memorandum. The trial court found the contract ambiguous and examined extrinsic evidence to determine the meaning of "substantially complete." From our examination of the documents we agree that the term "substantially complete" is ambiguous. Moreover, the record indicates that DRP did not object to the introduction of extrinsic evidence at trial. In addition, since DRP drafted the Memorandum, ambiguities will normally be construed in favor of Crews. *See Frank Rudy Heirs Assocs. v. Moore & Assocs.*, 919 S.W.2d 609, 613 (Tenn. App. 1995).

The documentary evidence admitted at trial court indicates that the parties intended the term "substantially complete" to mean that New Dexter Road and Bonnie Lane would be sufficiently complete for use by cars. The Addendum to the initial contract signed by the parties clearly required as a condition precedent to closing that "all improvements known as New Dexter Road [be] complete." The Indemnity Agreement between DRP and CTI, signed after DRP drafted and signed the Memorandum, contains the following provisions:

> WHEREAS, in reliance on Contractors [sic] ability to continue construction to full completion and development of New Dexter Road and Bonnie Lane, Seller executed that certain Memorandum of Agreement dated July 24, 1992, a copy of which is attached as "Exhibit A" and is incorporated herein as though copied verbatim; and

> WHEREAS, the Memorandum of Agreement provided that if such construction is not completed by November 1, 1992, the Sellers will pay the Purchaser a penalty of $1,335.00 per day for each day beyond November 1, 1992 until fully complete.

> WHEREAS, the Memorandum of Agreement further provided that Seller's failure to complete any such required improvement beyond the curbs and gutters for such streets, including but not limited to sidewalks, final grading and sodding, if applicable, shall not be subject to the November 1, 1992 completion date.

The language of the Indemnity Agreement indicates DRP's understanding that the Memorandum required full completion of the roads from curb to curb, with only the sidewalks and similar improvements outside the curbs excepted.

The evidence at trial also included two letters sent to DRP by Crews' real estate agent before the Memorandum was signed, during the period in which DRP was negotiating with Crews for an

5

early closing. The first letter, dated March 25, 1992, indicates that Crews had offered to close early in exchange for a reduction in the contract price, which DRP rejected. The letter then indicates Crews' willingness to close early "[u]pon removal of the contingencies to complete 'New Dexter' Road and approval of the Germantown Parkway curb cut." The second letter, dated June 3, 1992, contains an agreement to close early under certain conditions, including the following requirement:

> New Dexter Road and the access road back to Old Dexter Road must be 100% complete, dedicated and accepted by all necessary governmental authorities, not later than November 1, 1992. Anything beyond November 1, 1992 will be subject to a per diem penalty of $ 1,335.00 per day.

Both letters evidence Crews' intention that the roads be complete and ready for traffic by November 1, even though in signing the Memorandum Crews dropped his demand for government dedication and acceptance as well as completion of the sidewalks.

This extrinsic evidence, all of which was admitted into evidence without objection from DRP, indicates that both parties considered the Memorandum to require completion of the roads by November 1. The exception in the Memorandum concerning the sidewalks manifests the parties' intent that substantial completion would entail completion of the roads between the curbs, making the roads usable for automobile traffic, but not pedestrians, by the deadline. Therefore, the evidence preponderates in favor of the trial court's finding that the breach continued until December 31, 1992, when the roads were complete enough to be open to traffic. The trial court is affirmed on this issue.

DRP argues next that the contractual provision for liquidated damages is a penalty and thus unenforceable. While contracting parties may agree to the payment of liquidated damages in the event of a breach, courts will not enforce such a provision if it is deemed a penalty. ***Beasley v. Horrell***, 864 S.W.2d 45, 48 (Tenn. App. 1993). In determining whether a provision is for liquidated damages or a penalty, a court is not bound by the descriptive terms used by the parties in the contract; rather, the court will examine the substance of the transaction.[1] ***Testerman v. Home Beneficial Life Ins. Co.***, 524 S.W.2d 664, 668 (Tenn. App. 1974). Generally, liquidated damages are appropriate in situations where it is difficult to ascertain damages. ***See Airline Constr. Inc. v. Barr***, 807 S.W.2d 247, 260 (Tenn. App. 1990). In order for a liquidated damages provision to be upheld, the amount stipulated to by the parties must be a reasonable estimate of the expected

---

[1]Therefore, the fact that the Memorandum in this case refers to the damages clause as a penalty is not determinative.

damages resulting from a breach of contract. ***V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., Inc.***, 595 S.W.2d 474, 484 (Tenn. 1980). "Whether a provision for liquidated damages is reasonable is determined prospectively, at the time that the parties entered into the contract, rather than retrospectively." ***Kimbrough & Co. v. Schmitt***, 939 S.W.2d 105, 108 (Tenn. App. 1996). However, even if the damage amount seemed reasonable at the time of contracting, a liquidated damages provision will still be treated as a penalty if the amounts provided for greatly exceed the actual damages suffered by the non-breaching party. ***Harmon v. Eggers***, 699 S.W.2d 159, 163 (Tenn. App. 1985). Thus, "[i]n Tennessee, a liquidated damages provision must be both reasonable in relation to the anticipated damages from breach and not grossly disproportionate to the actual damages that occur." ***Beasley***, 864 S.W.2d at 48. Tennessee does not favor penalties; consequently, any doubt as to the character of a liquidated damages provision will be resolved in favor of finding it a penalty. ***Testerman***, 524 S.W.2d at 668.

In this case, the evidence at trial established that the figure of $1,335 per day for liquidated damages was based on Crews' projected net rental revenues for the property, after development, of $40,000 per month. In its first full year of operation, 1994, the shopping center which Crews constructed on the property earned an average net rental income of $37,662.87 per month ($1,255.43 per day). In 1995, it earned an average net rental income per month of $40,038.84 ($1,334.63 per day). These figures are close to the amount stipulated for liquidated damages. DRP points out that, for 1993, the shopping center only took in a total revenue of $14,119.82 and, due to various selling and administrative expenses, actually suffered an overall loss of $22,424.60. However, construction on the shopping center could not even begin until late February or early March of 1993, and the 1993 figures are based on only one month's operations. In addition, the parties evidently intended compensation based on full occupancy, which could not have been expected in the initial month after the completion of construction.

Unrebutted testimony established that Crews was unable to secure building permits and begin construction of the shopping center until the roads were complete. The fact that the roads were not finished until the end of December exacerbated Crews' predicament because inclement seasonal weather delayed the beginning of construction even further. Since, Crews had closed the transaction early, at DRP's request, Crews lost the interest he would otherwise have earned on the funds used to close the transaction had he waited to close until the roads were complete.

7

Therefore, the evidence indicates that the amount stipulated as liquidated damages was reasonable at the time of contracting. In addition, the liquidated damages were not grossly disproportionate to the actual damages suffered. Consequently, the evidence preponderates in favor of the trial court's implicit finding that the liquidated damages provision was not a penalty, and its award of $78,765 in liquidated damages. The trial court is affirmed on this issue.

DRP also claims the court erred in awarding pre-judgment interest and $7,500 in attorney's fees as a sanction for discovery violations. Both the award of pre-judgment interest and sanctions for discovery violations lie within the sound discretion of the trial court and will only be reversed upon an abuse of that discretion. *See Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994) (pre-judgment interest); *Ammons v. Bonilla*, 886 S.W.2d 239, 243 (Tenn. App. 1994) (discovery sanctions). Since DRP admitted at trial to breaching the contract yet refused to pay damages before suit was brought, we find no abuse of discretion in the award of pre-judgment interest. Likewise, we affirm the court's award of attorney's fees as a sanction for discovery violations. Once again, DRP admitted to its dilatory and incomplete responses to discovery. In addition, evidence at trial demonstrated that DRP, whether intentionally or not, gave false answers to interrogatories dealing with completion dates of various phases of the road construction. DRP also supplied a document to Crews as evidence of soil cement and asphalt work done at an early date, but this document pertained to unrelated work on a different project. At trial, Crews' attorney informed the court of the amount of time expended in procuring documents not supplied by DRP and in acquiring valid information to correct the misleading information which DRP did supply. Crews' attorney also informed the court of her hourly rate. The trial court based its award of attorney's fees on that information, and we find no abuse of discretion. The decision of the trial court is affirmed on these issues.

Appellee also requests that this appeal be declared frivolous. Upon review of the record and briefs in this case, we find that the appeal was not frivolous, and deny Appellee's request.

The decision of the trial court is affirmed. Costs are assessed against Appellants, for which execution may issue if necessary.

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**