Gaylon W. HARMON and Phyllis A. Harmon, Plaintiffs-Appellants,

v.

R.C. EGGERS, Pearl J. Eggers, Larry A. Eggers, and Ruth Ann Eggers, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

April 23, 1985.

Permission to Appeal Denied by Supreme Court July 8, 1985.

Sandra G. Olive, Knoxville, for plaintiffs-appellants.

Chris Rolls, Maryville, for defendants-appellees.

## OPINION

SANDERS, Judge.

In this suit to recover $5,000 in cash and certain real property which had been conveyed as the down payment on a second piece of property, the Plaintiffs have appealed from a decree of the chancery court holding their suit was barred by laches.

In January, 1979, the Plaintiffs-Appellants, Gaylon and Phyllis Harmon, entered into a contract with Defendant Robert C. Eggers (who was acting both for himself and as agent for other defendant family members) for the purchase of a house and lot in the Foothills Estates Subdivision in Blount County, Tennessee. As part of the $63,000 purchase price, the Plaintiffs paid $5,000 in cash and deeded to the Defendants certain other real property located on Highway 411 (hereafter referred to as the "411 property") in Blount County.

The Plaintiffs received a $27,000 credit for their transfer of the 411 property. This amount represented a $42,000 value for the property, less a $15,000 mortgage to Blount National Bank which was assumed by the Defendants. This made a total payment of $32,000 on the $63,000 purchase price.

The Foothills Estates property was encumbered by a mortgage in favor of First Federal Savings and Loan Association of Maryville. It appears the Plaintiffs were unable to assume the First Federal loan, and the parties instead proceeded with a contract for deed as a means of financing the transaction.

This contract was executed on February 15, 1979, and provided for the payment of the remaining $31,000 to the Defendants in 72 monthly installments of $379.85 each. At the conclusion of the payments, the sellers then were to deed the property to the Plaintiffs.

The contract also provided that

Failure of the Purchasers to make any monthly installment when due will be a breach of this contract for which the Sellers may re-enter and take possession of the premises described herein without any notice whatsoever from the Sellers to the Purchasers, and all monies paid by the Purchasers to the Sellers shall be retained by the Sellers as liquidated damages for the breach of this contract and as rent for the premises.

In conjunction with the execution of the contract for deed, Mr. Harmon also signed a "Buyer's Closing Statement," which, in part, reflected the $27,000 credit for the 411 property, a cash payment of $5606.31, as well as the remaining purchase price of $31,000.

Subsequent to closing, the Plaintiffs moved into the Foothills Estates property. They made the monthly payments due the Defendants for four months, then stopped paying, allegedly because of a dispute over an improperly functioning drain field on the property.

In September of 1979, the Plaintiffs filed suit in the Blount County Circuit Court to have the 411 property returned to them.

Thereafter, in December the Defendants, having not received monthly payments from the Plaintiffs for six months, commenced an unlawful detainer action in the General Sessions Court to have the occupants evicted from the property.

In February of 1980, the Harmons were in fact evicted from said property. At about the same time, their Circuit Court action was dismissed without prejudice.

In October, 1983, the Plaintiffs filed the present action in the Chancery Court, once again seeking to regain the 411 property previously owned by them, together with the $5,000 cash down payment. Specifically, the Plaintiffs sought to have the court declare the liquidated damages provision in the contract for deed of no effect on the basis of being a forfeiture and a penalty. They sought to have the 411 property returned to them, but agreed to pay any sums determined by the court as necessary to return the parties to the *status quo* as it existed prior to the January, 1979 contract of sale.

The Defendants, by way of answer, opposed the return of the 411 property or making restitution of any amount and, subsequently, pled laches as a bar to the Plaintiff's cause of action.

After the case went to trial, the Court rendered its decision, finding the Plaintiffs' claim to be in fact barred by laches. In discussing this matter, the Court noted that

> In this matter, the breach of the contract occurred in 1979. The cause of action, if any, arose at that time. The plaintiffs ... filed suit in the Circuit Court of this county seeking substantially the same relief as sought in this suit. That suit was subsequently dismissed, nonsuit in effect. And some four years after the filing of that suit, this suit was instituted, again seeking basically the same relief.

> The Court is persuaded and finds that during that period of time, the position of the parties has certainly changed; the circumstances of the property have changed.... [U]ntil after the close of all the presentation of testimony in this cause, no tender of any kind in restitution—if the parties attempt to be restored to their original position was offered. And the record further shows that under the facts and circumstances

of this case that reasonable restitution—if the contract was [sic] rescinded—the plaintiff would be unable to comply with. The record further shows that during this period of time, the properties have been preserved by the defendant....

In addition to giving credence to the defendants' laches defense, the Court further found that "[t]he plaintiffs breached the terms of the contract [for deed]." In this connection, it noted the parties "freely and under no constraint, misrepresentation, fraud, or overreaching of any kind entered into [the] contract for ... the sale and purchase of the home." In other words, it appears the Court did not read the liquidated damages clause as constituting a forfeiture and/or penalty.

■ The Plaintiffs have presented two issues on appeal. First, they contend the Chancellor erred in dismissing their cause of action on the basis they were guilty of laches.

Laches is "such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar in equity." 27 Am.Jur.2d *Equity* § 152 (1966). See also *Sunderhaus v. Perel & Lowenstein,* 215 Tenn. 619, 388 S.W.2d 140 (1964); *Hannewald v. Fairfield Communities, Inc.,* 651 S.W.2d 222 (Tenn. App.1983); *Thompson v. Coates,* 627 S.W.2d 376 (Tenn.App.1981).

Mere delay in asserting a claim *in and of itself* is not sufficient to give rise to the laches defense; the delay must have materially prejudiced the rights of another. *State ex rel. Wilson v. Mays,* 190 Tenn. 156, 228 S.W.2d 97 (1956); *State v. McPhail,* 156 Tenn. 459, 2 S.W.2d 413 (1927); *Hannewald, supra; Clark v. American National Bank & Trust Co.,* 531 S.W.2d 563 (Tenn.App.1974); *Goodrich v. Massachusetts Mutual Life Insurance Co.,* 34 Tenn.App. 516, 240 S.W.2d 263 (1951). See generally 27 Am.Jur.2d *Equity* §§ 169–71 (1966).

In determining whether or not to apply the doctrine of laches, a court will look to

the facts and equities of the particular case. See *State ex rel. Wilson, supra; Hannewald, supra.; Clark, supra.* Further, "the determination of all issues on questions of laches ... is the function of the chancellor, and his decision will not be reversed on appeal unless it is clearly shown to be wrong." *Freeman v. Martin Robowash, Inc.,* 61 Tenn.App. 677, 457 S.W.2d 606 (1970) (quoted with approval in *Hannewald, supra,* at 228). See generally 27 Am.Jur.2d *Equity* § 173 (1966).

From the record, we cannot say the Chancellor erred in finding the Plaintiffs had unreasonably delayed in reinstituting their suit. Nor do we find error with his conclusion that, during this delay, "the position of the parties ... certainly changed." The facts indicate the Defendants made the mortgage payments on the 411 property. They paid the property taxes and insurance on the property. They weathered several years of meager rental payments from an existing, unfavorable lease on the property such that by now the property is almost free from the lease and therefore of an increased value.

Despite the above, when reviewing all of the circumstances herein involved, we do not believe this is a proper case for the application of laches. It cannot be denied that, lying at the heart of equity jurisdiction, is the search for substantial justice between all the parties.

A court of equity is a court of conscience; it seeks to do justice and equity between all parties; it seeks to strike a balance of convenience as between litigants; and it looks to the whole situation. It does not act unless justice and good conscience demand that relief should be granted, and acts only in accordance with conscience and good faith.

· · · · ·

A court of equity will not do unjust or inequitable things and should not lend its aid to bring about a greater inequity. Its doctrine or principles will not be applied, or, invoked, for the purpose, or with the result, of defeating equity or doing an injustice, even to a wrongdoer,

if it can be avoided ...; nor will it permit a party having a legal right to avail himself of it for the purposes of injury, injustice, or oppression. It will not ... apply a remedy worse than the ills it seeks to cure. .

30 C.J.S. *Equity* § 89 (1965). See also *Hasden v. McGinnis,* 54 Tenn.App. 39, 387 S.W.2d 631 (1964) (where our Supreme Court stated "a person, although having a legal right, will not be permitted to avail himself of that right for the purpose of injury or oppression.") *Id.* 387 S.W.2d at 633.

This is precisely a situation in which a court, by applying the doctrine of laches, would be opting for "a remedy worse than the ills it seeks to cure." Keeping separate the liquidated damages provision of the contract for the moment, we find the application of laches in the present case would work an undue hardship on the Plaintiffs while resulting in an economic windfall to the Defendants of some $32,000.

There can be little, if any question that the Defendants would be receiving far in excess of the damages sustained by them by way of the Plaintiffs' breach of contract. "[E]quity seeks to prevent unjust enrichment, and will not permit one to enrich himself unjustly at the expense of another." 30 C.J.S. *Equity* § 89 (1965).

We disagree with the Chancellor's conclusion that the Plaintiffs would be unable to offer reasonable restitution to the Defendants under the existing facts. We believe a judgment for damages, coupled with the imposition of a judicial lien upon the subject property in favor of the Defendants, would adequately compensate them for their injuries.

We conclude the Chancellor erred in applying laches as to bar the Plaintiffs' cause of action.

■ The Appellants secondly assert the Chancellor erred in upholding the validity of the liquidated damages clause of the "Real Estate Sale and Purchase Agreement."

"The term 'liquidated damages' means a sum stipulated and agreed upon by the parties at the time they enter their contract, to be paid to compensate for injuries should a breach occur." *V.L. Nicholson Co. v. Transcon Investment and Financial Ltd., Inc.*, 595 S.W.2d 474, 484 (Tenn. 1980). See also *Railroad v. Cabinet Co.*, 104 Tenn. 568, 58 S.W. 303 (1900). See generally 22 Am.Jur.2d *Damages* § 212 (1965). "The reason for allowing parties to stipulate the amount of damages is to create certainty where damages are likely to be uncertain and not easily proven." *V.L. Nicholson, supra*, at 484.

On the other hand, "[a]s distinguished from liquidated damages, a 'penalty' ... is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of non-performance, and it involves the idea of punishment." 22 Am.Jur.2d *Damages* § 213 (1965).

"If the [liquidated damages] provisions is a reasonable estimate of the damages that would occur from a breach, then the provision is normally construed as an enforceable stipulation for liquidated damages." *V.L. Nicholson, supra*, at 484.

However, "[e]ven if the parties intended to fix an amount as liquidated damages, recovery will be limited to actual damages if the amount stipulated for is so greatly in excess of actual damages that it is, in effect, a penalty." *Eller Brothers, Inc. v. Home Federal Savings & Loan Association*, 623 S.W.2d 624 (Tenn.App.1981). See also *City of Nashville Traction Co.*, 142 Tenn. 475, 220 S.W. 1087 (1919); *Testerman v. Home Beneficial Life Insurance Co.*, 524 S.W.2d 664 (Tenn.App.1974).

Forfeitures and penalties are not favored. See *Testerman, supra*, at 668; *Hasden, supra*, 387 S.W.2d at 633. "[I]f there is a doubt whether a sum is in fact a penalty or liquidated damages, the Courts are inclined to hold the former." *Testerman, supra*, at 668. See also *Baird v. Tolliver*, 25 Tenn. (6 Hum.) 186 (1845); *Patterson v. Anderson Motor Co.*, 45 Tenn.App. 35, 319 S.W.2d 492 (1958).

In our review of whether the clause in question provides for liquidated damages or in fact assesses a penalty, we are guided by our Supreme Court's decision in *Beaden v. Bransford Realty Co.*, 144 Tenn. 395, 232 S.W. 958 (1921).

In *Beaden*, the plaintiff entered into a contract with the defendant realty company to purchase a piece of real property. The transaction was couched in terms of an option contract, and provided for the payment of $1,325 by the plaintiff in the following manner—$283 in a cash down payment and $1,042 in 94 monthly installments. At the conclusion of the 94th month period, if the payments had been made, the realty company would deliver a warranty deed to the plaintiff for the premises. The option contract contained a "liquidated damages" provision, similar to the one in the case at bar.

After allowing a voluntary repossession of the property by the defendant, the plaintiff filed an action to recover the sums it had paid,[1] less the reasonable rental of the property for the time he had occupied it.

The *Beadon* Court, quoting with approval from an earlier, unreported case of theirs, stated

It is perfectly clear that this provision was a mere penalty. The bill charges that the defendant put complainant out of possession of the property, which was tantamount to saying a forfeiture was declared.

We are of the opinion that these contracts exhibited with the bill were mere sale contracts with the provision for forefeiture of possession and all the purchase money that might be paid upon the failure to make any payment. Under such

---

1. The "sums paid" totaled $706.36, or approximately 53% of the purchase price. The plaintiff did not seek to recover the property that he had earlier traded in, since that property in the interim had been sold by the defendant to a third party. Instead, the plaintiff sought to recover the traded-in property's $283 assigned value.

circumstances, on declaration of the forfeiture, the rights of the parties should be settled upon the basis of permitting to the complainant a recovery of all purchase money paid, as well as the amounts paid for taxes and insurance, subject to a credit for reasonable rents. *Id.* at 403, 232 S.W. 958. For other cases in which Tennessee courts have refused to give effect to "liquidated damages" provisions, see *V.L. Nicholson, supra,* and *Eller Brothers, supra.*

As was the situation in *Beaden,* the Plaintiffs in the case at bar had paid in excess of 50% of the purchase price on the Foothills Estates property ($32,000 in down payments, plus four monthly installments, out of a total purchase price of $63,000) at the time of their default. To give effect to the "liquidated damages" provision of the "Real Estate Sale and Purchase Agreement" under these facts would be equivalent to our sanctioning a forfeiture/penalty, contrary to the interests of justice. This we cannot do.

As a result, we conclude the "liquidated damages" clause, being nothing more than or less than a forfeiture/penalty, is not to be given effect under the existing circumstances.

Having declared the "liquidated damages" provision to be inapplicable, we remand this matter for the Chancellor to fix the damages owing to the Defendants.

Quite recently, our Supreme Court, in *Turner v. Benson,* 672 S.W.2d 752 (Tenn. 1984), set forth the correct measure of damages in a case where the vendee has defaulted in a real estate transaction:

> [T]he general rule and proper measure of damages available to a vendor as against a breaching vendee in a real estate transaction is that the vendor is *entitled to the* difference between the contract price and the fair market value of the property at the time of the breach. 77 Am.Jur.2d *Vendor & Purchaser* § 489 (1975); 92 C.J.S. *Vendor & Purchaser* § 537 (1955); see also Annot., 52 A.L.R. 1511 (1928). In addition, however, the vendor may recover special damages, if any, that arise out of the breach of contract in order to compensate the vendor for any loss or injury actually sustained by reason of the vendee's breach. These special damages, though, must be within the reasonable contemplation of both parties, at the time the contract was made. *Illinois Central Railroad Co. v. Johnson and Fleming,* 116 Tenn. 624, 94 S.W. 600 (1906); *Machine Co. v. Compress Co.,* 105 Tenn. 187, 58 S.W. 270 (1900); *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854).

672 S.W. at 754.

The decree of the Chancellor is reversed, and the matter is remanded for the fixing of damages. The cost of this appeal is taxed to the Appellees.

GODDARD, and FRANKS, JJ., concur.