**VANDERBILT UNIVERSITY, Plaintiff,**

v.

**Gerry DINARDO, Defendant.**

**No. 3–95–0869.**

United States District Court,
M.D. Tennessee,
Nashville Division.

June 25, 1997.

---

William N. Ozier, Bass, Berry & Sims, Nashville, TN, Davidson French, Nashville, TN, for Plaintiff.

William R. Willis, Jr., Nashville, TN, Lawrence C. DiNardo, Thomas J. Piskorski, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

## MEMORANDUM

ECHOLS, District Judge.

Presently pending before the Court is Defendant's Motion for Summary Judgment, to which Plaintiff has responded in opposition. Plaintiff has also filed a Cross–Motion for Summary Judgment, to which Defendant has responded in opposition. For the reasons

outlined herein, Defendant's Motion is DE-NIED and Plaintiff's Motion is GRANTED.

Plaintiff, Vanderbilt University, filed this Complaint against Defendant, Gerry DiNardo, seeking damages arising from Defendant's alleged breach of an employment contract. Defendant filed a Motion for Summary Judgment asserting that he is entitled to judgment as a matter of law because the liquidated damage provision contained in the employment contract upon which Plaintiff's claim is based is: 1) an unlawful penalty provision under Tennessee law, and/or 2) inapplicable because Defendant was given permission to breach the employment contract.[1] Plaintiff also filed a Motion for Summary Judgment contending that it is entitled to judgment in its favor because the liquidated damage provision at issue is enforceable as a matter of law.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

The facts upon which Plaintiff's claim is based are as follows: On December 3, 1990, Plaintiff, Gerry DiNardo, and Defendant, Vanderbilt University, executed an employment contract ("Contract") under which Plaintiff was employed as Defendant's head football coach. The original termination date of the Contract was January 5, 1996. Section 8 of the Contract provided as follows:

> *Section 8.* Mr. DiNardo recognizes that his promise to work for the University for the entire term of this 5–year Contract is of the essence of this Contract to the University. Mr. DiNardo also recognizes that the University is making a highly valuable investment in his continued employment by entering into this Contract and its investment would be lost were he to resign or otherwise terminate his employment as Head Football Coach with the University prior to the expiration of this Contract. Accordingly, Mr. DiNardo agrees that in the event he resigns or otherwise terminates his employment as Head Football Coach (as opposed to his resignation or termination from another position at the University to which he may have been reassigned), prior to the expiration of this Contract, and is employed or performing services for a person or institution other than the University, he will pay to the University as liquidated damages an amount equal to his Base Salary, less amounts that would otherwise be deducted or withheld from his Base Salary for income and social security tax purposes, multiplied by the number of years (or portion(s) thereof) remaining on the Contract.

During the negotiations, the language of Section 8 was modified at the request of Defendant so that any liquidated damages would be calculated based on Defendant's net pay, rather than on his gross pay.

Defendant's base salary was initially set at $100,000 per year. By amendment to the Contract dated June 25, 1992, Plaintiff increased Defendant's base salary to $110,000, effective January 1, 1992. By amendment dated June 25, 1993, the base salary was increased to $125,000 per year. In April 1994, Plaintiff increased Defendant's base salary to $135,000 per year retroactive to January 1, 1994.

---

1. Defendant also claims that the damage provision is not a liquidated damages clause but instead is a thinly-disguised covenant not to compete. The Court disagrees that the damage clause should be so characterized. The clause provides for specific damages for a breach of contract if Defendant becomes employed elsewhere. However, the clause is applicable even if Defendant procures employment in a completely unrelated field.

Prior to August 1994, Defendant had expressed his desire of having his Contract extended as head football coach at Vanderbilt University. On or about August 14, 1994, Paul Hoolahan, Vanderbilt's Athletic Director, met with Defendant in Bell Buckle, Tennessee, where the football team was practicing, to discuss extending Defendant's employment contract for two years. During the August 14th meeting, Defendant indicated that he wanted to extend his Contract, but that he also wanted to discuss the matter with Larry DiNardo, his brother and attorney. Within a few days, he and Larry DiNardo did discuss the extension of the Contract. John C. Callison, the University's Deputy Counsel, also spoke to Larry DiNardo on the telephone about the extension.

On either August 17 or 18, 1994, Hoolahan returned to Bell Buckle and presented Defendant with an Addendum to his Contract which provided an extension for an additional two years. Defendant signed the Addendum in Hoolahan's presence. At the time of the signing, Hoolahan explained that the Addendum meant that the Contract "as it presently exists will be extended for two years with everything else remaining exactly the same as it existed in the present contract that you signed." Defendant was agreeable with the extension, but he asserts that, although he signed the document, he told Hoolahan he wanted to discuss it with his attorney He states that he understood that his signing the Addendum was not a final act, and was dependent on speaking with his attorney.

According to Plaintiff, Callison provided Larry DiNardo with a copy of the proposed extension of the Contract titled "Addendum" which provided, in pertinent part:

In all respects where the Contract provides for termination on January 5, 1996, the Contract is amended to reflect the Contract shall terminate on January 5, 1998. Sections 1, 6, 7(a) and 7(c) are respectively amended to change the date from January 5, 1996 to January 5, 1998, and where the context of any other language requires to give effect to the two-year extension of the contract, such amendment is hereby made. Except as amended in this Addendum and in any

previous Addendum, the Contract shall remain in full force and effect.

While it is undisputed that Callison and Larry DiNardo spoke regarding the extension of Defendant's Contract, Defendant maintains that Plaintiff did not provide Larry DiNardo a copy of the signed Addendum, and the copy of the Addendum faxed to him on August 25, 1994, was stamped "draft." On August 27, 1997, Larry DiNardo received a second fax from Plaintiff concerning other matters, with the instruction "let me know your comments on contract extension." Defendant or his attorney made no further effort to contact Plaintiff or to suggest any changes to the signed Addendum.

In November 1994, near the end of the 1994 football season, Joe Dean, the Athletic Director at Louisiana State University ("LSU"), asked Hoolahan for permission to speak with Defendant about a possible job at LSU. Defendant also asked Hoolahan for permission to speak with LSU regarding possible employment. Hoolahan verbally granted permission for LSU and Defendant to speak about the matter. On December 12, 1994, Defendant announced his decision to accept the job as LSU's head football coach and he resigned from his employment as head football coach at Vanderbilt University.

 Defendant contends that the liquidated damage provision contained in the employment contract is an unlawful penalty under Tennessee law. It is well established that parties to a contract may stipulate to an amount of liquidated damages. *Beasley v. Horrell,* 864 S.W.2d 45, 48 (Tenn.Ct.App. 1993) (citing *Patterson v. Anderson Motor Co.,* 45 Tenn.App. 35, 319 S.W.2d 492, 501 (1958)). Courts will not enforce liquidated damage provisions, however, where the provision is a penalty that punishes the defaulting party. *Id.* (citing *Harmon v. Eggers,* 699 S.W.2d 159, 163 (Tenn.Ct.App.1985)). In order to determine whether a liquidated damage provision is a penalty, the Court must consider "whether the amount stipulated was reasonable in relation to the amount of damages that could be expected to result from the breach." *Id.* (*Harmon,* 699 S.W.2d at 163). If the provision is a reasonable estimate of the damages that would occur from a

breach, then the provision is normally construed as an enforceable stipulation for liquidated damages. *V.L. Nicholson Co. v. Transcon Investment and Financial Ltd., Inc.*, 595 S.W.2d 474, 484 (Tenn.1980) (citing *City of Bristol v. Bostwick*, 146 Tenn. 205, 240 S.W. 774 (1922)). The Court must also determine whether the parties contemplated that such damages would flow from a failure to perform the contract, and that such damages would be indeterminate or difficult to ascertain. *Covington v. Robinson*, 723 S.W.2d 643, 647 (Tenn.Ct.App.1986) (quoting *Alley v. Rodgers*, 269 Ark. 262, 599 S.W.2d 739 (1980)).

In the present case, under Section 8 of the Contract, upon breach, Defendant would be required to pay an amount equal to his base salary, less that which would otherwise be deducted or withheld from his base salary for income and social security tax purposes multiplied by the number of years remaining on the Contract. At the time that Defendant terminated his employment, he was receiving a gross base salary of $135,000 and a net salary of $91,781.60 per year. Defendant terminated his Contract on December 12, 1994. The Contract with the Addendum expired on January 5, 1998. As such, the liquidated damage provision provided that Defendant pay Plaintiff $281,886.43.

It is the opinion of the Court that the liquidated damage provision in the Contract is not an unlawful penalty and that the established damages in the sum of $281,886.43 are reasonable when compared to the potential actual damages to be suffered by Vanderbilt on account of Defendant's breach. According to Vanderbilt, expenses associated with recruiting a new head coach amounted to more than $27,000. Moreover, because Defendant took his coaching staff with him to LSU, Vanderbilt had to pay $86,840 in order to move the new coaching staff to Nashville and into Vanderbilt facilities. The yearly compensation for the new coaching staff was $770,000, while the DiNardo coaching staff

was paid $708,563, a difference of $61,437. If this amount is multiplied by the three years remaining in the Contract, it totals $184,311.[2] Furthermore, the aforementioned specific damages sustained by Vanderbilt do not include the potentially extensive other damages to Vanderbilt which may result in having to suddenly replace a head football coach. Such damages are difficult to quantify, but may include damage to reputation and public relations, lost profits from reduced football ticket sales, lost talents of resigning assistant coaches, broken promises and relationships with players, lost recruits and future recruiting opportunities, reduced membership in athletic clubs and alumni support, decline in donations to the athletic program, redesigning publicity, media guides, logos and uniforms, etc.

Under the circumstances of this case, the Court finds the use of the formula based on Defendant's salary to determine the amount of liquidated damages is reasonable. Although DiNardo's base salary is not specifically related to any specific anticipated damages in the event he resigns, it is reasonable given the nature of the unquantifiable damages in this case. The potential damage to Plaintiff extends far beyond the cost of merely hiring a new head football coach. It is this uncertain potentiality that the parties sought to address by providing for a sum certain to apply towards anticipated expenses and losses. It is impossible to estimate how the loss of a head football coach will affect alumni relations, public support, football ticket sales, contributions, etc. Indeed, the success and reputation earned by the resigning coach, as well as that of the new coach may dramatically impact the situation. As such, to require a precise formula for calculating damages resulting from the breach of contract by a college head football coach would be tantamount to barring the parties from stipulating to liquidated damages in advance. In addition, the damage provision of the Contract does reflect a pro-

**2.** In response to Plaintiff's Statement of Undisputed Facts, Defendant denies that Plaintiff had to pay for the moving expense for a new head coach, etc. However, while Plaintiff submitted admissible evidence in support of its allegations regarding damages incurred, Defendant merely denied that Plaintiff's allegations are correct without citing to any admissible evidence contained in the record. Conclusory denials are insufficient to raise a genuine issue of material fact.

jected declining loss to Plaintiff based upon the length of service remaining on the coach's contract. This decrease is reasonable given Vanderbilt's concern about the stability of its football program and the investment made into DiNardo's "continued employment" as head football coach.[3]

Defendant asserts that in determining whether the liquidated damage clause is reasonable, the Court may not consider the consequential damages sustained by Vanderbilt, and instead is limited to consideration of the actual cost of replacing him as head coach. This argument is without merit. Parties to a contract may include consequential damages and even damages not usually awarded by law in a liquidated damage provision provided that they were contemplated by the parties. *See Smith v. American General Corp.,* Slip Op. No. 87–79–II, 1987 WL 15144 (Tenn. Ct.App. Aug. 5 1987) (citing authority).

In the present case, it is clear from the plain language of the Contract that the parties contemplated that the effect of a breach of contract by Defendant would have an impact beyond the cost of simply replacing his services. As quoted in Section 8 of the Contract, the liquidated damage provision, "the University is making a highly valuable investment in [DiNardo's] continued employment by entering into this Contract and its investment would be lost were he to resign or otherwise terminate his employment as Head Football Coach with the University prior to the expiration of this Contract." Furthermore, the Contract also provided that "a long-term commitment by Mr. DiNardo [was] important to the University's desire for a stable intercollegiate football program." As such, the parties contemplated damages other than the mere cost of replacement services that could result from Defendant's breach and the effect such a breach would have on Plaintiff's football program.

In further support of the reasonableness of the liquidated damage clause is the fact that the Contract was the result of arms-length negotiations. Not only was Defendant represented by counsel during the contract negotiation process, Defendant's counsel was successful in negotiating a substantial reduction in the liquidated damage provision by providing that the measure of damages would be Defendant's net rather than gross salary. Under the circumstances of Defendant's breach, this reduces the amount of liquidated damages by over $100,000.[4]

For the foregoing reasons, the Court finds that the liquidated damage clause in Section 8 of the Contract is reasonable, and thus enforceable, under the circumstances of this case.

Even assuming that the Court finds the liquidated damage clause to be reasonable, Defendant claims that he still is not liable to Plaintiff because he did not violate the employment contract. In particular, Defendant claims that he was given permission by Hoolahan to pursue the position with LSU and, as such, his conduct in terminating his employment with Plaintiff did not constitute a breach. This argument is novel, but somewhat disingenuous. Section 9 of the Contract, which immediately follows the liquidated damage provision contained in Section 8, provides as follows:

> [t]he parties agree that should another coaching opportunity be presented to Mr. DiNardo or should Mr. DiNardo be interested in another coaching position during the term of this Contract, he must notify the University's Director of Athletics of such opportunity or interest and written permission must be given to Mr. DiNardo by the Director of Athletics before any discussions can be held by Mr. DiNardo with the anticipated coaching-position principals.

It is clear that the parties anticipated that Defendant may wish to pursue other employment opportunities and Vanderbilt wanted to be informed in advance of any such discussions. Under the terms of the Contract, however, granting permission to

---

**3.** It is also reasonable that the amount of damages increased when the Addendum was executed as Vanderbilt made yet another commitment into the DiNardo football program.

**4.** It is interesting to note that the Contract contained a similar liquidated damage provision in favor of Defendant in the event Plaintiff terminated the contract prior to its expiration date.

644

discuss employment opportunities with another school under Section 9 does not constitute a waiver of the liquidated damage provision contained in Section 8.

■ Defendant next asserts that, assuming that the Court finds that the liquidated damage clause contained in the original Contract is enforceable, he should only be liable for the one year remaining on his original Contract. According to Defendant, the Addendum, which extended his Contract for two years, did not become effective, and therefore is invalid because it was not approved by his attorney.[5] The Court has carefully examined the record in the case and finds Defendant's argument to be unpersuasive. First, it is undisputed that Defendant had previously made known his desire to have his Contract extended. In response, Hoolahan personally drove to Bell Buckle to discuss the contract extension. Based on that positive discussion, he had Plaintiff's counsel prepare a simple Addendum extending the terms and conditions of the original contract for two additional years. When Hoolahan returned to Bell Buckle a few days later with the two-page written Addendum, Defendant voluntarily signed it with the full knowledge that it would extend his employment contract and all the terms contained therein for two years. Admittedly, Defendant told Hoolahan he wanted to discuss the Addendum with his brother who had helped to negotiate the original contract. The record does not reveal the extent of the actual discussions between Defendant and his brother after Defendant signed the Addendum. However, shortly thereafter, Plaintiff's attorney faxed a copy of the Addendum to Larry DiNardo, but Plaintiff received no response from Defendant or his brother.

■ Under Tennessee law, parties may enter into a contract containing a provision that in the event a party objects to its terms, the contract will not be enforceable. However, failure to disapprove of any objectionable terms constitutes validation of the contract. *Disney v. Henry*, 656 S.W.2d 859, 860 (Tenn. Ct.App.1983). In the present case, it is undisputed that Defendant's attorney never

contacted Plaintiff or any representative of Plaintiff concerning any objections, proposed changes, or revisions to the Addendum. In fact, Defendant apparently told others close to Vanderbilt's football program that he was happy with his contract extension. Throughout the fall of 1994, Larry DiNardo, Defendant's attorney, and Callison, Plaintiff's attorney, had several conversations regarding Defendant's radio and television contract, which was a separate document from the Addendum, and no objections or comments were made to suggest dissatisfaction or disapproval with the contract extension. On September 27, 1994, Callison sent a facsimile memorandum to Larry DiNardo in which he outlined Plaintiff's position on Defendant's compensation for hosting his fall radio and television shows. At the end of that memorandum, Callison added: "Also, I would like your comments on the contract extension." Despite this request, neither Larry DiNardo nor Defendant ever indicated to Plaintiff, expressly or implicitly, that the Addendum was unsatisfactory in any respect, nor did either of them ever request any change or modification to the Addendum. Furthermore, both parties acted as if the Contract had been extended and the matter had been put to rest. Accordingly, the Court finds that Defendant failed to demonstrate that the Addendum is not an enforceable contract as a matter of law.

■ Defendant also alleges that, assuming that the Addendum is valid, it is inapplicable to the liquidated damages because the parties did not intend to apply the Addendum to that portion of the original contract. However, the plain language of the Addendum indicates that the terms of the original Contract should be extended for two years in all respects. The Addendum expressly provides that the date of expiration should be changed in Section 1, 6, 7(a) and 7(c) because these sections specifically mention the old expiration date, but it also provides that the date of expiration of the Contract likewise be modified where "the context of any other language requires to give effect to the two-year extension". In order to give effect to the calculation of damages under Section 8,

---

**5.** It appears this defense was not raised in Defendant's answer or in the case management orders

entered October 25, 1995, and September 13, 1996.

the remaining years of employment by Defendant must be determined. Therefore, the two-year extension applies equally to Section 8 under the language of the Addendum.

Finally, Defendant contends that he was constructively discharged from his position as head football coach through certain conduct and actions taken by Plaintiff and its agents, and this prior breach by Plaintiff excuses or justifies his resignation. The Court finds this defense to be without merit. Most, if not all, the incidents cited by Defendant occurred prior to the time he requested and voluntarily agreed to sign a two-year extension under the Addendum. In addition, the fact that Defendant received three salary increases ($10,000, $15,000, and $10,000) during his four years of employment as head football coach at Vanderbilt belies the argument that Defendant was constructively discharged or that Plaintiff was attempting to persuade him to resign.

In conclusion, the Court finds the liquidated damage clause contained in Defendant's employment contract is reasonable as a matter of law. Since this clause provides designated damages of $281,886.43 as discussed in this Memorandum, Plaintiff's Motion is GRANTED, and judgment is entered in favor of Plaintiff in the amount of $281,-886.43. For the reasons stated herein, Defendant's motion is DENIED.