# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 8, 2012 Session

## JALAL BACHOUR v. DEVIN MASON, ET AL.

**Appeal from the Chancery Court for Cannon County**
**No. 0873     Royce Taylor, Judge**

**No. M2012-00092-COA-R3-CV - Filed May 30, 2013**

This case arose from two contracts between the same parties for the sale of commercial property. A provision in the second contract that was not included in the first provided that the buyer would retain $75,000 of the contract price if an access road to the property was not completed by a certain date. Completion was defined as occurring "upon the dedication and turning the streets over to the town of Woodbury and/or Cannon County, Tennessee." The buyer subsequently filed a petition for declaratory judgment, asking the court to find that completion had not occurred and that he was therefore entitled to keep the $75,000. The trial court ruled against the buyer, holding that he was obligated to pay the full contract price to the sellers. We affirm the result reached by the trial court because we find that the $75,000 clause was not a valid liquidated clause provision, but rather a penalty.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Angello Lin Huong, Lebanon, Tennessee, for the appellant, Jalal Bachour.

Jay Jackson, Murfreesboro, Tennessee; Johnathon Clyde Hershman, Woodbury, Tennessee, for the appellees, Devin Mason, Craig Mears and Mason & Mears Properties.

## OPINION

## I. TWO REAL ESTATE CONTRACTS

On June 27, 2007, Jalal Bachour ("Buyer") entered into a contract to buy two adjacent lots in Woodbury, Cannon County, from developers Devin Mason and Craig Mears, doing business as Mason and Mears Properties ("Sellers"). The total contract price was $300,000.

On August 8, 2007, the parties executed an addendum to their contract. The addendum did not change the total price for the two lots, but broke them down "for closing and tax purposes" to provide that the price of one of the lots was to be $275,000, and the price of the other $25,000. The proof showed that some time in August of 2007, Buyer also entered into a contract to sell one of the lots to a third party for $325,000, contingent on his ability to close on his purchase from Sellers.

In October of 2007, Sellers entered into a road construction agreement with Southern Villages, Inc., to build roads in their subdivision development. Prior to closing on the property, Sellers sent Buyer a copy of the road construction agreement.

Buyer and Sellers entered into a new contract for the $275,000 lot on November 14, 2007, and closed on the same day.[1] The total price for that lot remained unchanged, but Sellers received only $200,000 at closing. The contract provided that the remaining $75,000 was to be paid within thirty days of the completion of the roads. The contract also contained a clause requiring that construction on the streets begin by December 1, 2007 and be completed by January 1, 2008.

The contract provisions at the center of this case are those setting out financial consequences for any failure by Sellers to meet the deadline for completion of the streets. The contract provided that $1,000 was to be deducted from the $75,000 owed by Buyer to Sellers for each month after January 1, 2008 that those streets remained uncompleted. Further, in the event the streets were not completed by July 1, 2008, "the Sellers shall forfeit any balance remaining of the **SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00)** final payment. . ." Completion was defined in the contract as occurring "upon the dedication and turning the streets over to the town of Woodbury and/or Cannon County, Tennessee." The contract also stated that in the event the streets were not completed by the deadline date, the Sellers were liable for damages and would remain obligated to complete the streets.

---

[1]There was testimony that the parties executed a separate contract for the $25,000 lot and that the sale closed on different date. However, that contract was not entered into the record.

Street construction did not begin until May of 2008, but proceeded rapidly. On June 30, 2008, Woodbury Public Works Director Alan Paschal, affixed his signature to a document titled "Dedication and Acceptance of Public Roadways known as Mason Court and Mears Drive." In that document, Mr. Paschal purported to accept the roads on behalf of the Town of Woodbury, "said roadway having been completed." The other signatories to the document were Craig Mears and Howard Wilson, representing the contractor, Southern Villages, Inc.

Shortly thereafter, Buyer contracted with Randy Laine, an engineer, to perform a site inspection and assess the level of completion of the roadway. In a letter dated July 7, 2008, Mr. Laine reported that the roadway paving was completed at the time of the inspection, but that shoulder work, grading and drainage were still in progress and far from completion.

## II. A COMPLAINT FOR DECLARATORY JUDGMENT

On August 5, 2008, Buyer filed a complaint for declaratory judgment in the Chancery Court of Cannon County, naming as defendants Devin Mason, Craig Mears, Mason and Mears Properties, and the Town of Woodbury.[2] Buyer alleged that Mr. Paschal was not authorized under the City's subdivision regulations to accept and adopt a roadway. He accordingly asked for a declaration that the street construction was not completed by July 1, 2008, and that as a result Sellers forfeited the remaining balance of the $75,000 final payment on the property.

Sellers filed a counter-claim for breach of contract and for payment of the remaining contract balance. A four day bench trial was conducted over a period of six months.

When Mr. Bachour took the stand, he was questioned about the circumstances behind the inclusion of the retainage provision in the contract of November 24, 2007, and his reasons for making it part of the contract. He testified that the road was very important to him because if was not finished on time, he risked the loss of potential commercial buyers. Asked about how he arrived at the figure of $75,000, he acknowledged that it was an arbitrary number, not based on any particular estimate of potential damages, but he insisted that "[i]t was based on potential damages, but you cannot estimate them before they happen."

Mr. Bachour's deposition testimony was read into the record, wherein he referred to the $75,000 as a "penalty" or as "a heavy penalty" for not finishing the road on time, and stated that he wished he had asked for more, "like $150,000." On the stand, he declined to characterize the provision as a penalty, but rather insisted that he considered it more like "an

_____

[2]The Town of Woodbury was subsequently dismissed as a defendant.

incentive" to finish the road quickly.

At the conclusion of testimony, the trial court issued a ruling from the bench and memorialized it in a judgment filed on December 5, 2011. The court declared that because the contract of November 14 was between the same parties and involved the same subject matter as the contract of July 27, additional consideration was required to make the later contract enforceable. The court stated that it could not find any evidence of additional consideration, and it concluded that, in accordance with the principles enunciated in this court's opinion in the case of *American Fruit Growers v. Hawkinson,* 106 S.W.2d 564 (Tenn. Ct. App. 1937), the November 14 contract was void and unenforceable.

The court accordingly declared that the June 27 contract (and addendum) controlled the legal relationship between the parties. Since there was no mention of the road in that contract and no provisions for withholding any part of the contract price, the court ruled that the sellers were entitled to $75,000 in contract damages as well as $30,000 in pre-judgment interest. The court also found that the Public Works Director had apparent authority to accept the roadways, implying that even if the contract of November 14 contract were valid, the defendants would still be entitled to prevail. This appeal followed.

### III. LIQUIDATED DAMAGES

There was very little dispute as to the facts of this case, and this appeal only involves questions of law about the creation, interpretation and enforcement of contracts. Our review of the proceedings below is therefore *de novo*, with no presumption of correctness accorded to the trial court's conclusions of law. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

We conclude that the $75,000 "incentive" was unenforceable for reasons other than those relied upon by the trial court.[3]

Our legal system has always placed a high value on the freedom to contract. *See Baugh v. Novak,* 340 S.W.3d at 382 (stating that "Tennessee law recognizes that the individual right of freedom of contract is a vital aspect of personal liberty"); *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 892 (Tenn. 2002) ("Historically,

---

[3]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Shutt v. Blount*, 194 Tenn. 1, 8, 249 S.W.2d 904, 907 (1952); *In re Estate of Jones*, 183 S.W.3d 372, 378 n.4 (Tenn. Ct. App. 2005); *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 577 (Tenn. Ct. App. 2003).

the 'freedom of contract' has insured that parties to an agreement have the right and power to construct their own bargains"); *Harbison v. Knoxville Iron Co.*, 53 S.W. 955, 957 (Tenn. 1899)(stating "the right of contract is undoubtedly an inherent part of the right of liberty, and also of the right of property.").

Individuals are therefore entitled to enter into contracts as they see fit, so long as the contract is not against public policy. *Baugh v. Novak*, 340 S.W.3d 372, 383 (Tenn. 2011) (citing *Third National Bank in Nashville v. Olive*, 281 S.W.2d 675, 678 (Tenn. 1955)). Further, "[i]n the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them." *Dobbs v. Guenther,* 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992)(citing *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955)).

> The term "liquidated damages" is defined by case law as a "sum stipulated and agreed upon by the parties at the time they enter their contract, to be paid to compensate for injuries should a breach occur." . . . The stipulated amount represents an estimate of potential damages in the event of a contractual breach where damages are likely to be uncertain and not easily proven. . .

*Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 96-97 (Tenn. 1999).

Buyer testified that the $75,000 retainage provision in the contract of sale was designed to compensate him for damages that he might suffer if the road was not completed on time.

However, liquidated damages provisions in contracts are subject to close scrutiny because of the public policy against forfeitures. *Kimbrough & Co. v. Schmitt*, 939 S.W.2d 105, 108 (Tenn. Ct. App. 1996); *Harmon v. Eggers*, 699 S.W.2d 159, 163 (Tenn. Ct. App. 1985). In order for a liquidated damages clause to be enforceable, there must be a reasonable relationship between the stipulated amount and the amount of damages that might reasonably be expected in the event of a breach. *Teter v. Republic Parking System*, 181 S.W.3d 330, 343 (Tenn. 2005); *V. L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., Inc.*, 595 S.W.2d 474, 484 (Tenn. 1980).

When the amount of a liquidated damages clause is deemed not to bear a reasonable relationship to the amount of damages likely to result from a breach of the contract, then the clause is deemed to be an unlawful penalty, and is not enforceable. *Guiliano v. Cleo, Inc.*, 995 S.W.2d at 98. "A penalty is a 'sum inserted in a contract, not as a measure of compensation for the breach itself, but rather as a punishment for default.'" *Beasley v. Horrell*, 864 S.W.2d 45, 48 (Tenn. Ct. App. 1993) (quoting *Harmon v. Eggers*, 699 S.W.2d

at 163).

Tennessee law disfavors penalties, and an unreasonable liquidated damages provision will not be enforced, regardless of whether it was agreed to by the parties. *Brooks v. Networks of Chattanooga*, 946 S.W.2d 321, 324 (Tenn. Ct. App. 1996). *See also*, *Guiliano v. Cleo, Inc.*, 995 S.W.2d at 101 (stating that if the surrounding circumstances show that a liquidated damages provision was merely intended to penalize for a breach of contract, then the provision is an unlawful penalty, and is therefore unenforceable as against public policy). "Because forfeitures and penalties are not favored, any doubt as to whether a sum is a penalty or liquidated damages will generally be resolved as the former." *Kimbrough & Co. v. Schmitt*, 939 S.W.2d at 108 (citing *Harmon v. Eggers*, 699 S.W.2d at 108; *Beasley v. Horrell*, 864 S.W.2d at 50).

In this case, Buyer testified that the road was very important to his plans for the property, and that he had added the $75,000 provision to the contract in order to make Sellers aware of its importance and "to get their attention." Excerpts from Buyer's deposition that were read into evidence during his testimony referred to the provision as "a penalty" and as "a heavy penalty." Buyer was questioned closely about what damages he was likely to suffer in the event that the road was not completed on the agreed-upon date. He admitted that those damages were impossible to estimate, but he referred generally to the loss of marketability of the property, the possibility of lost sales, and falling prices of real estate at the time.

The proof showed that Buyer had already contracted to sell the property for $325,000 at the time of the November 14 contract. Buyer argued, however, that he had not yet closed on that sale and that his buyer would need the road for access to a planned Auto Zone store. He did not, however, present any evidence that Auto Zone had required that the road be completed by any particular date. Nor did he present any evidence, other than his own unsupported statement, about the condition of the real estate market in Cannon County in the last quarter of 2008.

The testimony of the parties also shows that there was no discussion between Buyer and Sellers about the damages Buyer might suffer from any delays in the completion of the road. Instead, Buyer simply presented Sellers with the draft of the contract containing the $75,000 provision on November 14, 2007, and told them that if they did not sign he would walk away from the sale. When he was questioned at deposition about the $75,000 figure, Buyer did not attempt to justify it in terms of the magnitude of his possible losses, but simply stated that he wished he had asked for more, even though it was clear by that time that he had not suffered any actual damages.

It thus appears to us that the $75,000 was not based on any estimate of potential damages, but was just an arbitrary figure that Buyer plucked from thin air. There is no evidence to support his contention that the figure bears any relation to the potential damages he would likely have suffered if the roads were not completed in the physical sense or if they were not accepted by the City, on or before the deadline date of July 1, 2008. We conclude rather that the provision was a penalty designed to punish the Sellers and that it is therefore unenforceable. We accordingly affirm the result reached by the trial court.

## IV.

The judgment of the trial court is affirmed. Remand this case to the Chancery Court of Cannon County for any further proceedings necessary. Tax the costs on appeal to the appellant, Jalal Bachour.

_____
PATRICIA J. COTTRELL, JUDGE